IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BEN SCHERR,                                    )
                                               )
       Plaintiff,                       )   No. 13 C 1841
  v.                                           )
                                               )   Judge Robert W. Gettleman
WESTERN SKY FINANCIAL, LLC, MARTIN A.          )
WEBB, CASHCALL, INC., and DOES 1-20,           )
including individuals and entities doing business as )
WS Funding LLC and under other names,          )
                                               )
       Defendants.                      )

## MEMORANDUM OPINION AND ORDER

Plaintiff Ben Scherr sued defendants Western Sky Financial LLC, Martin A. Webb ("Webb"), and CashCall, Inc. in the Circuit Court of Cook County, Illinois, alleging that defendants violated various Illinois statutes by issuing to him a usurious loan. Defendants removed the case to this court based on diversity of citizenship, and have now moved to dismiss arguing that: venue is improper; plaintiff's claims are barred by the Dormant Commerce Clause; the complaint fails to state a claim under Illinois law; the court lacks personal jurisdiction over defendant Webb; and the contract forum selection clause requires that the case be heard in the Cheyenne River Sioux Tribal Court. For the reasons described below, the motion is denied.

## BACKGROUND

Defendant Webb is a member of the Cheyenne River Sioux Tribe. Webb owns defendant Western Sky and a number of other South Dakota limited liability companies, all of which are in the business of providing high-interest loans through internet transactions. Webb and all of his entities operate from their headquarters located on the Cheyenne River Indian Reservation in

South Dakota, purportedly under tribal law. Defendant CashCall is a California corporation that services certain of Western Sky's loans.

In October 2012, plaintiff applied for and received a $10,000 loan from Western Sky. The loan charged an annual interest rate of 89.63% on the principal amount. Plaintiff applied for the loan from his home in Illinois by submitting an application through Western Sky's website. He made one payment of less than $1,000 and then brought the instant suit to void the loan and keep the remaining proceeds. Plaintiff claims that the loan is both civilly and criminally usurious under Illinois law and that defendants knew that the loan was unenforceable because they had already been sued for similar conduct in Jackson v. Pay Day Financial, LLC, No. 11 C 9288 (N.D. Ill.).

## DISCUSSION

**1.    Venue**

Defendants first argue that the case should be dismissed because plaintiff cannot establish that venue in this judicial district is proper under the general venue statute, 28 U.S.C. § 1391. In particular, defendants argue that plaintiff cannot establish that a "substantial part of the events or omissions giving rise to the claim occurred" in this district. 28 U.S.C. § 1391(b)(2). Defendants are incorrect.

this case was removed from state court. "`Venue in an action removed from state court to federal court is governed by the removal statute, 28 U.S.C. § 1441, not the general venue statute, 28 U.S.C. § 1391.'" Marion T LLC v. Formall, Inc., 2013 WL 1768665, *2 (S.D. Ind. April 24, 2013) (quoting Allied Van Lines, Inc. v. Aaron Transfer & Storage, Inc., 200 F.Supp.2d 941, 945 (N.D. Ill. 2002) (citing Polizzi v. Cowles Magazines, Inc., 345 U.S. 663, 665 (1953)).

Indeed, in Polizzi, the Supreme Court specifically held that § 1391 does not determine venue in a removed case, because the text of § 1391 "limits the district in which an action may be brought" and, because a removed action was technically brought in state court, § 1391 lacked operative force. Polizzi, 345 U.S. at 665-66.

Under § 1441, actions may be removed to "the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Because the instant action was removed from the Circuit Court of Cook County, Illinois, the instant court is the court for the district and division where the action was pending. Venue is proper under § 1441, and defendants' motion to dismiss for improper venue is denied.

**2.      Dormant Commerce Clause**

Defendants next argue that the Dormant Commerce Clause bars application of Illinois law to plaintiff's loan which, according to defendants, was consummated outside of Illinois. The United States Constitution allocates to Congress the power to regulate interstate commerce. U.S. Const. Art. I § 8. This affirmative grant of authority to Congress "encompasses an implicit or `dormant' limitation on the authority of the States to enact legislation affecting interstate commerce." Healy v. Beer Inst. Inc., 491 U.S. 324, 326 n.1 (1989).

State statutes may violate the Dormant Commerce Clause in three ways. First, a statute that clearly discriminates against interstate commerce in favor of intrastate commerce is per se invalid, and can survive only in the rare instance that the discrimination is justified by a valid factor unrelated to economic protectionism. Second, a statute that does not discriminate against interstate commerce may be invalidated under the balancing test of Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970). Third, a statute is invalid per se if it has the practical effect of

extraterritorial control of commerce occurring wholly outside the boundaries of the state in question. KT & G Corp. v. Attorney General Okla., 535 F.3d 1114, 1143 (10th Cir. 2008).

In the instant case, defendants focus on the third situation, arguing that application of Illinois law to plaintiff's loan regulates commerce occurring wholly outside of Illinois. Relying on Midwest Title Loans, Inc. v. Mills, 593 F.3d 660, 665 (7th Cir. 2010), defendants argue that a contract occurs wholly outside of a state's borders, and therefore outside of its regulatory authority, when the contract forms in another jurisdiction. Because the instant contract was completed and thus formed, according to defendants, when Western Sky approved plaintiff's application and wire transferred the money, application of Illinois usury law is barred by the Dormant Commerce Clause.

Defendants read Midwest Title Loans far too broadly. In Midwest, the plaintiff, an Illinois car title lender, sued to enjoin, as a violation of the Dormant Commerce Clause, application to it of Indiana's version of the Uniform Consumer Credit Code, which included a ceiling on interest and other restrictions. Indiana had passed a "territorial application provision" that stated that a loan is deemed to occur in Indiana if a resident of Indiana entered into a loan transaction with a creditor in another state and the creditor had advertised or solicited loans in Indiana by any means including by mail, brochure, telephone, print, radio, tv, the internet, or electronic means. Midwest Title Loans, 593 F.3d at 662. Midwest had offices in Illinois only, and loans were made to Indianians (or anyone else) in person only at an Illinois office. The loans were in the form of cashier's checks payable to the borrower drawn on an Illinois bank. The borrower was required to deliver a set of keys at closing to enable Midwest to exercise self-help repossession in the event of a default. Midwest notified the Indiana Bureau of Motor

4

Vehicles of the loan so that it would be noted on the official record of the borrower's title. Midwest advertised the loans on Indiana television and through direct mailings.

The district court held that because the Indiana borrowers had to travel to Illinois to consummate the loan and received the money, the loans were completed in Illinois and thus occurred wholly within the state of Illinois. Midwest Title Loans Inc. v. Ripley, 616 F.Supp.2d 897, 906 (S.D. Ind. 2009). In reaching this conclusion, the court specifically noted the Tenth Circuit's opinion in Quick Payday Inc. v. Stork, 549 F.3d 1302, 1308 (10th Cir. 2008), in which it adopted the view that "the borrower's physical location at the time of solicitation is controlling." Ripley, 616 F.Supp.2d at 905. The Seventh Circuit affirmed, again based on the fact that Indiana residents had to travel to Illinois to receive a loan. "To allow Indiana to apply its law against title loans when its residents transact in a different state that has a different law would be arbitrarily to exalt the public policy of one state over that of another." Midwest Title Loans, 593 F.3d at 667-68.

Defendant argues that Midwest Title Loans applies because the instant contract was formed wholly on the Cheyenne River Sioux Reservation in South Dakota when Western Sky accepted plaintiff's application and issued the loan. It also argues that the agreement itself contained language by which plaintiff had agreed that the agreement was executed and performed solely within the interior boundaries of the Cheyenne River Indian Reservation, and that plaintiff had "executed the agreement as if you were physically present within the exterior boundaries of the Cheyenne River Indian Reservation."

Despite the language of the contract, plaintiff was physically present in Illinois when defendants made their offer, and was physically present in Illinois when he accepted the offer.

5

Defendant also sent the money to plaintiff in Illinois. Plaintiff's physical location controls for purposes of the Dormant Commerce Clause, and when an offer occurs in one state and acceptance occurs in another, both states' laws may apply. See Dean Foods Co. v. Brancel, 187 F.3d 609, 620 (7th Cir. 1999); Quick Payday, 549 F.3d at 1308. Forum selection clauses and choice of law provisions in a contract may have bearing on personal jurisdiction and venue, but do not control application of the Dormant Commerce Clause. See, Midwest Title Loans, 593 F.3d at 668. Defendants' motion to dismiss based on the Dormant Commerce Clause is denied.

**3.      Personal Jurisdiction**

Defendant Webb argues that the allegations of the complaint fail to establish a prima facie case of personal jurisdiction over him. See Felland v. Clifton, 682 F.3d 665, 672 (7th Cir. 2012). The court disagrees.

There is no doubt that there is personal jurisdiction over Western Sky based on its entering into the loan with plaintiff and its advertisements in Illinois. Defendants do not argue otherwise. The complaint also alleges that:

> The actions of Western Sky are controlled, and are under the personal direction of, Martin A. Webb or employees of his, acting at his direction or on his behalf. Specifically and at all times material to this complaint, acting alone or in concert with others, Webb has formulated, directed, controlled, had the authority to control, or participate in any acts and practices set forth in this complaint, including particularly the decision to make loans to Illinois residents, the decision to advertise to Illinois residents, and the rates of interest charged.

Webb argues that this allegation simply suggests that he controls the company he owns and is thus personally responsible for all of Western Sky's actions, including the decision to lend money to plaintiff. Under these circumstances Webb argues that he is protected by the fiduciary shield doctrine which provides that "conduct of a person in a representative capacity cannot be

relied upon to exercise individual personal jurisdiction over that person." Rollins v. Ellwood, 141 Ill.2d 244, 276 (1990). Once again the court disagrees.

The fiduciary shield doctrine "prevents courts from asserting jurisdiction over a person on the basis of acts taken by that person not on his own behalf, but on behalf of his employer." Id. In adopting the doctrine, the Illinois Supreme Court "suggested that the element of compulsion involved in an employee's contacts with Illinois made it unfair to assert personal jurisdiction over him." Jones v. Sabis Educ. Sys., Inc., 52 F.Supp.2d 868, 884 (N.D. Ill. 1999). Courts look to whether the defendant's actions were discretionary and whether personal gain motivated the actions. See Rice v. Nova Biomedical Corp., 38 F.3d 909, 912 (7th Cir. 1994).

The instant complaint does not allege that Webb was simply following directions from his employer. The complaint alleges that Webb is the employer, that he made all the decisions, including the decision to charge the usurious interest rates, knowing that those rates violated Illinois law. Although not alleged directly, the facts pleaded lead to the inference that Webb made those decisions to further his own personal gain. Although discovery may lead to a different result on summary judgment or trial, at this stage of the case the court finds that the fiduciary shield doctrine does not justify dismissal of defendant Webb for lack of personal jurisdiction.

**4. Failure to State a Claim**

Defendants next argue that even if Illinois law is applicable, the complaint nonetheless fails to state a claim. To state a claim, the complaint must allege sufficient facts that, if true, would raise a right to relief above the speculative level, showing that the claim was plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). To be plausible on its

face, the complaint must plead facts sufficient for the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In the instant case, plaintiff alleges that defendants knowingly entered into a loan that provided for an interest rate of 89%, far in excess of the 9% cap set by the Illinois Interest Act. 815 ILCS 205/6. The complaint alleges that defendants knew that the interest rate was usurious under Illinois law and, indeed, had been sued for the same actions previously. These allegations are sufficient to state a claim. This is particularly true because the loan documents appear to make every effort to avoid application of Illinois law. Whether defendants actually believe that their efforts to avoid Illinois law would be successful cannot be determined at this stage of the litigation. There can be no doubt, however, that the complaint alleges that defendants knew that the loan would be illegal under Illinois law. Consequently, defendants' motion to dismiss for failure to state a claim is denied.[1]

**5.     Forum Selection Clause and Tribal Exhaustion Doctrine**

Finally, defendants argue that the complaint should be dismissed under the loan's forum selection clause and the Tribal Exhaustion Doctrine. Defendants acknowledge that this argument is foreclosed by the Seventh Circuit's decision in Jackson v. Payday Financial, LLC, 764 F.3d 765 (7th Cir. 2014), and is presented solely for preservation purposes.

**CONCLUSION**

For the reasons described above, defendants' motion to dismiss is denied. Defendants' answer to the complaint is due on or before February 5, 2015. The parties are directed to file a

---

[1] Because the complaint alleges, in a single count, the violation of a number of Illinois statutes, the court's conclusion that it states a claim under the Illinois Interest Act makes it unnecessary to address defendants' arguments regarding the other Illinois statutes.

joint status report using this court's form on or before February 12, 2015, and to appear for a report on status on February 18, 2015, at 9:00 a.m.

**ENTER:  January 6, 2015**

_____
**Robert W. Gettleman
United States District Judge**